TOWNSHIP ROAD COMMISSION OF GOLD MINE TOWNSHIP v. THE BOARD OF COMMISSIONERS OF FRANKLIN COUNTY.

(Filed 15 October, 1924.)

**1. Roads and Highways—Public Roads—Taxation—Statutes—Local Laws.**

It was the intent and purpose of C. S., 3718, 3719, 3720 and 3721, that the public roads of a township formed under the provisions of a special statute, with a road commission having charge of its public roads (ch. 84, Public-Local Laws 1919), to provide for the continued maintenance of the roads, and for the payment of interest on bonds issued for their construction, and *held,* under the statute applicable in this case the county commissioners can levy a special tax sufficient for such purposes, the local and the general act on the subject being consistent and their terms not repugnant to each other.

**2. Same—Elections—Necessaries—Constitutional Law.**

The maintenance of township roads under a board of commissioners duly constituted, and the provision for the payment of interest on bonds issued for the purpose with provision for their retirement at maturity, are necessary expenses not requiring, when permitted by statute, and in the absence of statutory requirement to the contrary, an authorization by the approving vote of the electors of the district.

**3. Same—Mandamus.**

Where the county commissioners have wrongfully refused to levy a road tax, authorized by statute upon the request of township road commissioners, it is a refusal to perform a ministerial duty, and the remedy by mandamus will lie.

APPLICATION for mandamus, instituted by summons, etc., to compel a tax levy for maintenance of public roads in Gold Mine Township, heard before *Horton, J.,* at August Term, 1924, of FRANKLIN.

There was judgment directing the tax levy as prayed for, and defendant commissioners appealed.

*W. H. Ruffin and T. W. Ruffin for plaintiff.*
*S. A. Newell and James S. Massenburg for defendant.*

HOKE, C. J. The county of Franklin seems to have very generally established a township system for the construction and maintenance of its public roads, and in chapter 84, Public-Local Laws 1919, a road commission is appointed for Gold Mine Township, in said county, who are commissioned to take charge of laying out, opening, maintaining or discontinuing the public roads of the township, and to that end are clothed with all the rights and powers now vested in the board of county commissioners or other commission or board for the general supervision of such roads and the construction and repair thereof.

Under the statute, and an amendment thereto, at Special Term, 1920, said township board of commissioners, on approval of the voters, are authorized to issue bonds to the amount of $80,000, which are to constitute a liability of the township, and the county commissioners are directed to levy an annual tax of not less than 25 cents nor more than 75 cents on $100 value on the property of the township, and also a poll tax, for the purpose of providing for the principal and interest on said bonds, and for the construction, improvement and maintenance of the township roads, which said bonds, approved at an election as required, have been issued and sold, and now constitute a municipal liability of the township, as stated.

It further appeared at the hearing that owing to a horizontal reduction of values to the amount of 40 per cent, ordered by the county commissioners under statutory authority, the amount of taxes to be realized by a tax levy of the 75 cents, the maximum allowed by the local statute referred to, will scarcely suffice to pay the interest on the bonds and to provide a sinking fund to pay same at maturity, a duty held to be incumbent on the authorities in *Spitzer v. Comrs., ante,* 30.

Under these conditions the road commissioners for the township applied to the commissioners of the county to levy on the taxable property of the township an additional tax for maintenance of the township roads, under the provisions of an act of the General Assembly, passed in 1919 (chapter 190), appearing in Consolidated Statutes (chapter 70, Article 6). The county board professed a readiness to make the levy if it had the power, but declined the request of the road commission, on the ground that the local law was exclusive in the matter and the board was thereby restricted to a maximum tax levy of 75 cents on the hundred dollars, as heretofore stated.

Upon these the facts chiefly pertinent this Court fully approves the judgment of the lower court directing a tax levy, as follows:

"It is ordered, considered, and adjudged that the defendant board of commissioners levy on all taxable property within said township taxes as follows:

"(1) A tax of 75 cents on the $100 worth of property, to provide annual interest and a sinking fund on the bonds issued for the year 1924, under the provisions of said special act (chapter 84 of the Public-Local Laws of 1919).

"(2) A tax in a sum sufficient to provide a maintenance fund in accordance with the provisions of the road maintenance law (chapter 190, Public Laws 1919, as brought forward in chapter 70 of the Consolidated Statutes), to wit, a sum amounting to $4,000, by a tax-rate levy of 76 cents on the $100 worth of property for the year 1924.

"(3) And that each year thereafter they shall levy and lay in said Gold Mine Township a special tax in a sum sufficient to provide for the payment of interest on $80,000 of road bonds and provide a sinking fund, which at maturity will be adequate to pay off the sum; said levy to be based upon the property valuation from year to year as the same may be ascertained, and the rate of such taxation to be determined by the limits of the special act providing for the issuance of said bonds, or any amendment thereto.

"(4) That they shall each year thereafter at the same time levy in said Gold Mine Township, under the provisions of the said road maintenance act, a tax in a sum sufficient to provide for the maintenance of roads in accordance with the provisions of Article 6 of the Consolidated Statutes and especially sections 3718, 3719 and 3720 thereof."

This county road maintenance tax upon which the judgment is principally based was enacted by the General Assembly of 1919, chapter 190, on matters here pertinent, and appears in chapter 70, Article 6, as follows:

"3718. Where the board of county commissioners of any county in the State has heretofore issued and sold, or may hereafter issue and sell, bonds for the construction or reconstruction of the roads in the county or in any township or road district therein, such board of commissioners is directed to levy annually during the life of the bonds a special tax on all taxable property, both real and personal, sufficient to raise an amount equal to at least three per cent, and not more than five per cent, of the total amount of bonds issued by the county, except as hereinafter specified, for the construction or reconstruction of the public roads, as may be necessary to maintain said roads in a satisfactory manner.

"3719. The money raised by the special tax authorized by the preceding section shall be used for the maintenance of the roads in said county, township or road district in which the tax is collected, and which were or will be built by the revenue derived from the sale of bonds; and shall not be used for any other purpose except as herein provided.

"3720. Taxes for the maintenance of the roads built from the revenue derived from said bonds shall be levied upon the following scale: Where the roads have cost one thousand dollars per mile or less, a tax sufficient to raise not less than fifty dollars per mile per year shall be levied. Where the roads have cost more than one thousand and not more than two thousand dollars per mile, a tax of five per cent shall be levied. When the roads have cost more than two thousand dollars per mile and not more than three thousand dollars per mile, a tax of four per cent shall be levied. When the roads have cost more than three thousand dollars per mile, a tax of three per cent shall be levied.

"3721. When in any county, township or road district the fund raised under this article is thought to be more than sufficient to maintain the roads in proper condition the board of county commissioners are authorized to apply to the State Highway Commission for an investigation to determine the amount needed for the proper maintenance of the roads to be maintained by the county, and upon certification by said State Highway Commission, showing that funds are more than sufficient, a reduction may be made in the levies as above provided, so that only such levies as will provide the amount needed may be made."

A proper persual of these sections, in our opinion, will disclose that not only is there no necessary inconsistency between the general and special acts relating to this subject, but the former is clearly designed to supplement the latter and to provide for the very conditions that are here presented. It would indeed be an improvident course to expend $80,000 of township money to construct a road system and then allow them to run down and practically disappear for lack of an adequate maintenance fund, "and the Legislature, recognizing that such conditions might occur, has wisely provided for dealing with them and thus conserve the roads and save to the residents of the township and others the benefit of their principal investment." Being for a necessary expense, no further vote of the people is required for this maintenance tax. *Hargrave v. Comrs.,* 168 N. C., p. 626; *Trustees v. Webb,* 155 N. C., p. 379. And the amount authorized by the special local legislation being all required for paying the interest on the bonds and providing an adequate sinking fund, our decisions applicable are in full approval of the judgment entered by the Court commanding the additional levy. *Blair v. Comrs.,* 187 N. C., p. 488; *Kinston v. R. R.,* 183 N. C., pp. 14, 20, 21; *Burgin v. Smith,* 151 N. C., p. 561.

The decision in *Bramham's case,* 171 N. C., p. 196, cited and relied upon by appellant, does not conflict with the disposition made of the present appeal. That was a case involving the power of the city of Durham to make a bond issue without a vote of the people of the city. Speaking to the case, in *Kinston v. R. R., supra,* the Court said: "That was a case involving the validity of a bond issue, and it appeared that the public act passed in 1915 authorized a bond issue without the approval of a popular vote. At the same session, 1915, the Legislature passed a special act by which the city of Durham was authorized, if the measure was approved by popular vote, to make a bond issue of $300,000 to construct, pave, and improve the streets and sidewalks of the city of Durham. The city authorities undertook to issue bonds for the purpose indicated without approval of the voters as the private act required, and the proposed measure was enjoined. It will be noted that

both acts were in force and effect, and it was clear that the bond issue permitted to Durham only after a vote was intended to provide for the entire work then contemplated, that it contained a clause repealing any and all laws inconsistent with its provisions, and the Court held that the private act, being still in force and requiring a popular vote, was inconsistent with the proposed issue without such vote and by correct construction it had the effect of exempting the city of Durham from the public statute, assuredly so while the private act was in force and intended to cover, for the present at least, the entire subject." But not so here, where, as shown, the local act authorized a bond issue on approval of the voters, and the proceeds proving insufficient to meet the primary purposes of the local act, a current maintenance tax under the general act is directed to be laid to preserve and maintain the roads.

Referring again to the County Road Act, it appears that when the additional tax is required the commissioners are directed to lay it, and for a definite amount, as indicated in section 3720, to be reduced only after an investigation and finding by the State Highway Commission that the fund to be realized by the required levy is more than sufficient for the purpose. This being a clearly defined ministerial duty imposed upon the commissioners by the statute, mandamus is available to plaintiffs and has been properly allowed. *Spitzer v. Comrs., ante,* p. 30; *Tyrrell v. Holloway,* 182 N. C., p. 64; *Jones v. Comrs.,* 137 N. C., p. 579.

There is no error, and the judgment of the Superior Court is
Affirmed.