This is a controversy without action. The facts agreed upon: "That prior to 7 March, 1927, the date upon which the County Finance Act (chapter 81, Public Laws of 1927), was ratified, there was an accumulated deficit in the General County Fund in McDowell County, North Carolina, in the form of floating indebtedness, in the sum of $50,000, all of which was incurred prior to the said date and was on and prior to that date a legal obligation, represented by certain contracts in the form *Page 414 
of notes executed in the name of McDowell County, which notes were held by various banks and individuals, all of which indebtedness was created for necessary expenses of said county.
"That pursuant to the provisions of the said County Finance Act, at the regular May meeting, 1927, of the board of commissioners of the county of McDowell, an order was introduced looking to the permanent financing of the said floating indebtedness of the said county, notice of which order was published as provided by said chapter, and after publicly hearing and considering the order as introduced, to wit:
"`It is ordered by the board of county commissioners of McDowell County, North Carolina:
"`Section 1. That negotiable coupon bonds of McDowell County, North Carolina, be issued in the maximum principal amount of fifty thousand dollars ($50,000), to be known as "Funding Bonds," for the purpose of funding valid indebtedness for necessary expenses incurred before 1 July, 1927, and payable at time of passage of this order or within one year thereafter.
"`Sec. 2. That a tax sufficient to pay the principal and the interest of the bonds when due shall be annually levied and collected.
"`Sec. 3. That statement of the county debt has been filed with the clerk, pursuant to the County Finance Act, and is open to public inspection.
"`Sec. 4. That this order shall take effect upon its passage, and shall not be submitted to the voters.'
"The same was read and, upon motion, unanimously passed by the affirmative vote of the members of the said board, and was so declared by the chairman of the said board at a special meeting of the said board held on 17 May, 1927, and thereupon the board passed a resolution authorizing the issuance of funding bonds pursuant to the provisions of the said County Finance Act, in the sum of $50,000, and advertised notice of the sale of said bonds to be held on Tuesday, 7 June, 1927, at which time the defendant, Assell, Goetz Moerlein, Inc., became the highest and best bidder therefor, at the price of par and accrued interest, for bonds, properly and legally issued, bearing interest at the rate of four and three-quarters per cent per annum, payable semiannually, and maturing as set forth in said resolution, and its bid was unanimously accepted and the bonds ordered to be executed, issued and delivered to the purchaser, together with the approving opinion of a firm of attorneys agreed upon.
"That all matters and things required by the County Finance Act to be done, preliminary and leading up to the actual issuance of the said *Page 415 
bonds, have been done and fully complied with, and the bonds as offered by the plaintiff to the defendant are in all respects in the form required by and in full compliance with the terms of the said act.
"That during the session of the North Carolina General Assembly of 1927, an act (chapter 532, Public-Local Laws 1927), entitled, `An act to regulate issue of bonds in McDowell County,' was passed and ratified 7 March, 1927.
"That the necessary expenses of the county of McDowell, chargeable to the General County fund, for the fiscal year beginning 1 July, 1927, will require the levy of a tax to the constitutional limitation of fifteen cents on the hundred dollars valuation of property, or approximately that amount, making it impossible that the said accumulated deficit, as aforesaid, might be made up from a tax levy, and the funding of the said indebtedness or deficit by the issuance of funding bonds, under the provisions of the County Finance Act, is necessary, and the only avenue open to the board of commissioners for the county of McDowell, for making up such accumulated deficit, as required by the County Fiscal Control Act (chapter 146 of the Public-Local Laws of 1927).
"That upon the proceedings authorizing the issuance of the funding bonds being submitted to attorneys for their approving opinion, the questions were raised: (a) As to whether chapter 523, Public-Local Laws of 1927, prohibited the board of commissioners of McDowell County from issuing funding bonds under the terms of the County Finance Act (chapter 81, Public Laws 1927), without a vote of the people; and (b) as to whether the County Finance Act, authorizing the levy of a special tax under the provisions of section 8 of said act is in conflict with section 6, of Art. V, of the Constitution of North Carolina; that is, the question was raised as to the constitutionality of the provision of the County Finance Act relating to the issuance of funding bonds and the levy of a special tax therefor; and, thereupon, the defendant refused to take and pay for the said bonds in accord with its bid.
"That if the plaintiff is authorized and empowered to issue bonds under the County Finance Act, as aforesaid, the defendant stands ready, able and willing to take and pay for the same."
The court below held that the bonds "are valid and legal and are authorized by legal authority, and that the levy of the tax is not prohibited by the Constitution of North Carolina."
The questions of law involved:
1. Whether or not, under Public Laws 1927, ch. 81, sec. 8, subsection (j) of the County Finance Act, bonds may be issued by the county commissioners to fund floating indebtedness of the county incurred before 1 July, 1927, for necessary expenses, which will require a tax levy in excess of 15 cents on the $100 valuation of property to pay such bonds.
2. Whether such bonds issued for such purpose, without a vote of the people, is prohibited by chapter 523, Public-Local Laws 1927, entitled "An Act to Regulate the Issuance of Bonds in McDowell County."
Subsection (j), supra, is as follows: "Funding or refunding of valid indebtedness incurred before first of July, one thousand nine hundred and twenty-seven, if such indebtedness be payable at the time of the passage of the order authorizing the bonds or be payable within one year thereafter, or, although payable more than one year thereafter, is to be canceled prior to its maturity and simultaneously with the issuance of the funding or refunding bonds, and all debt not evidenced by bonds which was created for necessary expenses of any county and which remains outstanding at the ratification of this act is hereby validated."
The agreed case shows that the $50,000 deficit was created for necessary expenses and a valid and legal obligation of the county incurred prior to 1 July, 1927. To fund this floating indebtedness by issuing bonds will require a tax levy in excess of 15 cents on the $100 value of property.
Const. of N.C. Art. V, sec. 6, is as follows: "The total of the State and county tax on property shall not exceed fifteen cents on the one hundred dollars value of property, except when the county property tax is levied for a special purpose and with the special approval of the General Assembly, which may be done by special or general act: Provided, this limitation shall not apply to taxes levied for the maintenance of public schools of the State for the term required by article nine, section three, of the Constitution: Provided further, the State tax shall not exceed five cents on the one hundred dollars value of property."
In Herring v. Dixon, 122 N.C. at p. 424, the decisions are summed up as follows: "(1) For necessary expenses, the county commissioners may levy up to the constitutional limitation without a vote of the people or legislative permission. (2) For necessary expenses, the county commissioners may exceed the constitutional limitation by special legislative authority without a vote of the people. Constitution, Art. V, sec. 6. (3) For other purposes than necessary expenses a tax cannot be levied either within or in excess of the constitutional limitation except *Page 417 
by a vote of the people under special legislative authority. Constitution, Art. VII, sec. 7." Tate v. Comrs., 122 N.C. 812; Smathers v. Comrs., 125 N.C. at p. 488; Henderson v. Wilmington, 191 N.C. 269.
In R. R. v. Cherokee County, 177 N.C. 86, the language of the act in controversy "to provide for any deficiency in the necessary expenses and revenue of said respective counties." In R. R. v. Comrs.,178 N.C. p. 449, the language of the act "to meet the current and necessary expenses of the county." R. R. v. Reid, 187 N.C. p. 320, approves a case cited, the language of the act of the case cited being "to supplement the general county fund."
The defendant cites some of the above cases to sustain its contention, that the agreed case shows that the proposed bond issue is intended to fund indebtedness created for necessary expenses of the county, and was an accumulated deficit in the general county fund in McDowell County. In other words, the indebtedness proposed to be funded was for ordinary expenses of the county or for necessary county purposes generally spoken of as currentexpenses.
The cases cited are to the effect that a county cannot go beyond the 15 cents on the $100 valuation of property for current expenses. There are other necessary expenses of a county other than current, such as roads, bridges, county buildings, county homes for the aged and infirm, etc. Under the Constitution a county can go beyond the limitation for such necessary expenses, "as they are a special purpose and with the special approval of the General Assembly which may be done by special or general act." ("j,"supra.) The general act, subsection (j) says further, "Funding or refunding of valid indebtedness incurred before 1 July, 1927."
Under chapter 81, Laws 1927, sec. 2, the act defines "necessary expenses, means the necessary expenses referred to in section 7, Art. VII, of the Constitution of N.C." That section is as follows: "No county, city or town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein." It will be seen that necessary expenses here referred to are not alone current or ordinary expenses of a county, but such as are classed as roads, bridges, etc. R. R.v. Reid, supra; Storm v. Wrightsville Beach, 189 N.C. 679.
The whole matter is carefully considered in R. R. v. Reid, supra. In that case the facts were disputed. The levy was 18 cents on the $100 valuation of property, 3 cents over. Defendant, sheriff and tax *Page 418 
collector, when restraining order was sought by the railroad, contended and set up the fact that the 3 cents was for special necessary expenses, viz., constructing and maintaining bridges and maintaining the home for the aged and infirm. Although the minutes of the board showed a levy of 18 cents for the general county fund or current expenses, in fact only 15 cents was levied for that purpose and the additional 3 cents for the other necessary special purposes above mentioned. The case was reversed and remanded to the end that the board of commissioners be made parties, and if the minutes were incorrect, and corrected minutes would show that the 3 cents was not for special necessary purposes above mentioned, but the 18 cents was levied for general county purposes or current expenses, the order restraining the collection of the tax in excess of 15 cents should be made permanent.
In the present case the record does not disclose that the $50,000 indebtedness was for current or general county expenses. If it did the bonds to fund same would be invalid, as the levy for such purpose could not exceed, under the constitutional limitation, 15 cents on the $100 valuation of property. The record does show that the proposed bond issue was for necessary expenses of the county and a valid and legal obligation of the county. The subject or subjects of the necessary expense or expenses for special county purposes are not set forth, and nothing else appearing, it is taken for granted that they were for one or more special necessary purposes and funding permissible under Constitution, Art. V, sec. 6, and the County Finance Act. The special approval has been given by the general act.
In Edwards v. Comrs., 183 N.C. at p. 60, it is said: "But the authorities apparently are uniform in holding that where there is no attempt to legalize prior litigation, or a prior invalid seizure or sale of property, or to interfere with vested rights, a statute enacted to confirm or validate a defective assessment of taxes is not in violation of the organic law, and is, therefore, effective for the purpose intended. This conclusion rests upon the recognized and accepted doctrine that a retrospective law, curing defects in acts that have been done, or authorizing or confirming the exercise of powers, is valid in those cases in which the Legislature originally had authority to confer the power or to authorize the act." Construction Co. v. Brockenborough, 187 N.C. 65;Holton v. Mocksville, 189 N.C. 144; Storm v. Wrightsville Beach, supra.
The latter part of "j," supra, says: "And all debt not evidenced by bonds which are created for necessary expenses of any county, and which remains outstanding at the ratification of this act is hereby validated." *Page 419 
Under the first proposition in controversy we think the tax can be levied and is valid and legal, and a vote of the people is not necessary.
The next proposition: The County Finance Act, ch. 81, Public Laws 1927, and the local act relating to bond issues in McDowell County, ch. 523, Public-Local Laws 1927, were ratified on the same day, 7 March, 1927. Considering them together, we are of the opinion that it was the intention of the General Assembly, and authority is hereby given the board of commissioners of McDowell County to issue bonds, without a vote of the people, to fund valid indebtedness of the county incurred before 1 July, 1927. The act for McDowell County is prospective, not retroactive. In fact it says: "That nothing in this act contained shall prevent the board of commissioners of McDowell County . . . from issuing bonds to refund maturing bonds heretofore issued and outstanding," etc.
"Every reasonable doubt is resolved against a retroactive operation of the statute." Comrs. v. Blue, 190 N.C. at p. 643.
The board of commissioners of McDowell County is attempting to put into effect the provisions of the County Fiscal Control Act (chapter 146, Public Laws 1927), and to wipe out deficits and make a new start, living within its income. The purpose of the act is set forth in section 24: "It is the purpose of this act to provide a uniform system for all counties of the State by which the fiscal affairs of counties and subdivisions thereof may be regulated, to the end that accumulated deficits may be made up and future deficits prevented, either under the provisions of this act or under the provisions of other laws authorizing the funding of debts and deficits, and to the end that every county in the State may balance its budget and carry out its functions without incurring deficits." The County Finance Act (chapter 81, Public Laws 1927) provides the machinery for funding or refunding valid indebtedness of counties incurred before 1 July, 1927.
The local McDowell County act is prospective, looking to the future, but providing for funding past valid indebtedness. The issuance of bonds in the future, with certain exceptions, are prohibited "unless and until the question of the issuance thereof is submitted to and authorized by a vote of the majority of the qualified voters of said county."
"All acts of the same session of the Legislature upon the same subject-matter are considered as one act, and must be construed together, under the doctrine of `in pari materia.'" Wilson v. Jordan, 124 N.C. at p. 687. It has been long settled that no court would declare a statute void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. The philosophy of our system of government is based on the consent of the governed, subject to constitutional limitations. *Page 420 
Construing all the acts, both the public and private act for McDowell County together, a wise system is provided for issuing bonds to fund existing valid debts and throwing safeguards around future bond issues and preventing deficits. The purpose is laudable and requires counties to live within their incomes. See Hartsfield v. Craven County, ante, 358. The judgment below is
Affirmed.