IN THE MATTER OF THE RESOLUTIONS PASSED BY THE CITY COUN-
CIL OF THE CITY OF DURHAM ON MARCH 3, 1952, AND MARCH 17,
1952, RELATING TO PROPOSED STREET PAVING, WATER, SANI-
TARY SEWER AND STORM SEWER IMPROVEMENTS ON LIBERTY
STREET FROM DILLARD STREET TO HYDE PARK AVENUE AND
THE RESOLUTIONS PASSED BY THE CITY COUNCIL OF THE
CITY OF DURHAM ON OCTOBER 19, 1953, AND ON NOVEMBER 16,
1953, CONFIRMING OR PURPORTING TO CONFIRM THE ASSESS-
MENT ROLLS ASSESSING OR PURPORTING TO ASSESS THE
LANDS ABUTTING ON LIBERTY STREET WITH THE COSTS OF
SAID IMPROVEMENTS.

(Filed 3 February, 1956.)

1. **Statutes § 2: Municipal Corporations § 30—**

An act applicable to a single municipality which authorizes the munici-
pality to make street improvements and assess the cost thereof against
abutting property owners without a petition *held* not in contravention of
Section 29, Article II, of the Constitution of North Carolina, since the act
is merely declaratory of the powers given the municipality under the
general law and does not purport to authorize the laying out of a particu-
lar street or streets or to authorize the maintenance or discontinuance of
a designated street or streets.

2. **Municipal Corporations § 30—Statutory procedure for public improve-
ments held substantially complied with.**

In this proceeding to test the validity of assessments for public improve-
ments made by defendant municipality pursuant to Chapter 924, Session
Laws of 1949, the admissions and evidence disclosed that all the procedural
requirements of the statute, including notice and an opportunity to be
heard, were complied with, except that the original notices failed to state
the reasons for making the proposed improvements. There were no con-
tentions that the improvements were not necessary in the public interest
or that petitioner's property had not been enhanced in value in an amount
equal to the assessments, and it appeared that petitioner made no written
objection to the validity of the assessments at the hearing as required by
Section 2 (f) of the act, and further that the reasons for making the
improvements were incorporated in the minutes of the city council at a
later date. *Held:* The stipulations and evidence support the court's
finding that the statutory procedure had been substantially complied with,
and the validity of the assessments is upheld.

**3. Municipal Corporations § 32—**

> Where a triangular area condemned by a municipality for street purposes lies between the lot of petitioner and the actual street, so that the last twenty feet of petitioner's lot abuts on the triangular area rather than on the street, such twenty feet may not be used in calculating the number of feet of petitioner's property which abuts the street for the purpose of assessment in the absence of evidence that the area had been used for street and sidewalk purposes by the municipality.

APPEAL by petitioner from *Fountain, Special Judge,* February Term, 1955, of DURHAM.

The City Council of the City of Durham, pursuant to the provisions contained in the acts, referred to hereinafter, and, without a petition, made certain improvements on Liberty Street, from Dillard Street to Hyde Park Avenue, namely: paving, water, sanitary sewer, storm sewer, curb, gutter and drainage. Liberty Street runs in an easterly direction from Church Street to U. S. Highway No. 70.

The petitioner owns property abutting on the north side of Liberty Street in the block between Peachtree Place and Elizabeth Street, and on the south side of Liberty Street between Taylor Street and Elizabeth Street.

Chapter 224 of the Private Laws of 1927 originally applied to only seven cities, but was amended to include Durham by Chapter 425 of the Session Laws of 1947, thereby making the act apply to the City of Durham. This Private Act is a comprehensive one and authorizes the cities named therein to make local improvements and to assess all or part of the cost thereof against the abutting property.

Chapter 924 of the Session Laws of 1949 applies only to the City of Durham and is supplemental to and independent of the powers and authority granted by the General Assembly of North Carolina as contained in the General Statutes and as contained in Chapter 224 of the Private Laws of 1927, as amended by Chapter 425 of the Session Laws of 1947.

The City of Durham is authorized under the provisions of Chapter 924 of the Session Laws of 1949 to make local improvements and to assess the entire cost thereof, except such part thereof as is incurred at street intersections, against the abutting property without a petition therefor. Section 2 of Chapter 924 of the Session Laws of 1949 reads as follows:

"When it is proposed to make without petition any improvement or improvements described in Section 1 hereof, the governing body shall adopt a resolution which shall contain substantially the following:

"(a) That this proceeding is taken under and will be governed by the provisions of this Act (stating the number of the Chapter and the Session at which passed by the General Assembly) ;

"(b) A statement of the reasons proposed for the making thereof;

"(c) A brief description of the proposed improvement or improvements;

"(d) The proportion of the cost of the improvement or improvements to be specially assessed and the terms of payment;

"(e) A notice of the time and place when and where a public hearing will be held on the proposed improvement or improvements. (The time fixed for such public hearing shall be such as to allow of notice being given thereof not less than ten days prior thereto) ;

"(f) A notice that all objections to the legality of the making of the proposed improvement or improvements shall be made in writing, signed in person or by attorney, and filed with the clerk of the municipality at or before the time of such hearing, and that any such objections not so made will be waived.

"The resolution shall be published one time in a newspaper published in the municipality, the date of publication to be not less than ten days prior to the date fixed for the hearing."

It is conceded by all parties that the various resolutions adopted by the City Council of the City of Durham stated that the proceedings with reference to such improvements were taken pursuant to the provisions of Chapter 924 of the Session Laws of 1949, and those portions of Chapter 224 of the Private Laws of 1927, as amended, which are incorporated into and made a part of Chapter 924 of the Session Laws of 1949.

It is stipulated in the record that the various resolutions and notices were actually published in the newspapers as specified by them and as recited therein.

There is no contention that the applicable acts have not been complied with in the proceedings, except the appellant contends and it is admitted by the appellee that the preliminary resolutions calling for the publication of the proposal to make the local improvements, as well as in the final resolutions ordering the improvements to be made, did not contain a statement of the reasons proposed for the making of such improvements, at the time they were published, as provided in Section 2 (b), Chapter 924 of the Session Laws of 1949. However, it does appear from the record that on 16 November, 1953, the same day the final resolution was passed confirming the assessment roll for the improvements, the City Council of the City of Durham adopted the report of a special committee, appointed to consider objections and protests to the confirmation of the assessment roll, which report, among other

things, contained a recommendation to amend, if necessary, the pre-
liminary resolutions, and stated the reasons proposed for making the
improvements as follows: "In order to promote the safety, health,
sanitation, comfort, convenience, and welfare of the public of the City
of Durham and for the special benefit of abutting properties located on
said street."

No written objection to the legality of the proposal to make the im-
provements was filed by any affected property owner, as required by
Section 2, subsection (f), of Chapter 924 of the Session Laws of 1949.

The petitioner has interposed no objection to the improvements made,
but objected only to the assessment against his property based on the
grounds set forth in his appeal.

Upon the final adoption of the assessment roll, after the City Council
had found as a fact that each lot abutting upon said improvements,
including the lands of the petitioner, has been specially benefited by
such improvements in an amount at least equal to the assessment
specially assessed against such land, and that the assessments shown
on the assessment roll are in proportion to such special benefits, the
petitioner gave notice of appeal to the Superior Court. He petitioned
the Honorable Leo Carr, Resident Judge of the Tenth Judicial District
(now the Fifteenth Judicial District), for a *writ of certiorari*, requiring
the proper officials of the City of Durham to certify to the Superior
Court all resolutions adopted or purported to have been adopted by the
City Council of the City of Durham in connection with these local
improvements. The writ was granted and the matter came on for hear-
ing in the court below on three contentions, viz.: (1) that the acts
under which the proceedings were conducted are invalid because they
are repugnant to Section 29, Article II, of the Constitution; (2) that if
the acts are constitutional, respondents failed to comply with the pro-
visions thereof by failing to state in the preliminary resolutions, passed
3 March, 1952, the reasons proposed for making the improvements;
and (3) if the acts are valid and it is held that they were substantially
complied with, then the assessment on the south side of the street is
for twenty feet more frontage than abuts upon the improvement, and
an adjustment as to these twenty feet should be made.

The parties waived a jury trial and agreed that the trial judge might
hear the evidence, find the facts, make his conclusions of law and render
judgment thereon.

The court found the facts accordant with those hereinabove stated
and concluded that there had been a substantial compliance with all
the statutory requirements in connection with the making of the im-
provements and the assessments against the respective abutting prop-

erties. Whereupon, judgment was entered confirming the assessments. The petitioner appeals, assigning error.

*Spears & Spears for the petitioner.*
*Claude V. Jones for appellee City of Durham.*

Denny, J. It would seem that this appeal may be disposed of on its merits by a consideration of the three contentions urged in the lower court without a *seriatim* discussion of the numerous exceptions and assignments of error set out in the record.

We shall consider the grounds upon which these contentions are based in the order posed.

Are the acts, pursuant to which the City Council of the City of Durham acted in making these local improvements and assessing the cost thereof, repugnant to Section 29, Article II, of our Constitution?

In our opinion, the acts complained of do not come within the purview of Section 29, Article II, of our Constitution which precludes the General Assembly from passing any local, private or special act "authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys." It will be noted that this section of the Constitution takes away from the General Assembly the power to pass any local, private or special act "relating to the establishment of courts inferior to the Superior Court; relating to the appointment of justices of the peace; relating to health, sanitation, and the abatement of nuisances; changing the names of cities, towns and townships," etc. But, we have held that local acts relating to the improvement of streets and alleys generally in a city or town, and authorizing the assessment of the cost thereof against the abutting property, do not conflict with Section 29, Article II, of our State Constitution. *Holton v. Mocksville*, 189 N.C. 144, 126 S.E. 326; *Gallimore v. Thomasville*, 191 N.C. 648, 132 S.E. 657. Unquestionably, an act purporting to authorize the laying out of particular streets or highways, or to authorize the maintenance of a designated street or streets, or the discontinuance thereof, would be repugnant to the above section of our Constitution. *Deese v. Lumberton*, 211 N.C. 31, 188 S.E. 857.

In the last cited case, this Court said: "Before Chapter 216, Private Laws of 1925, could be in violation of Article II, Section 29, of the Constitution, it would have to relate to laying out, opening, altering, or discontinuing of a *given, particular* and *designated* highway, street or alley." *Cf. Matthews v. Blowing Rock*, 207 N.C. 450, 177 S.E. 429.

It would seem that the acts challenged are only declaratory of, or supplementary to, the powers given the City of Durham under the general law. *Hill v. Commissioners*, 190 N.C. 123, 129 S.E. 154.

In the case of *Holton v. Mocksville, supra,* the constitutionality of Chapter 86, of the Private Laws of 1923, entitled, "An act relating to the financing of street and sidewalk improvements in the Town of Mocksville," was attacked. This Court, speaking through *Connor, J.,* said: "Section 4 of Article VIII of the Constitution imposes upon the General Assembly the duty to provide by general laws for the improvement of cities, towns and incorporated villages. It does not, however, forbid altering or amending the charter of cities, towns and incorporated villages or conferring upon municipal corporations additional powers or restricting the powers theretofore vested in them. We find nothing in Section 4, Article VIII of the Constitution rendering this Act unconstitutional, nor does the act relate to any of the matters upon which the General Assembly is forbidden by Section 29 of Article II to legislate. *Kornegay v. Goldsboro,* 180 N.C. 441."

Likewise, in *Gallimore v. Thomasville, supra,* Chapter 217 of the Private Laws of 1925 provided: "that any and all acts heretofore done and steps taken by the city of Thomasville in the paving of streets . . . and the assessments levied therefor are hereby in all respects approved and validated." The plaintiff there, like the petitioner here, contended that the act was unconstitutional. The Court, again speaking through *Connor, J.,* said: "Plaintiff's contentions that said act is invalid, because the General Assembly was prohibited by the Constitution of the State from passing it, cannot be sustained. It is not in violation of Section 29, Art. II, of the Constitution; it does not authorize the laying out, opening, altering, maintaining, or constructing of highways, streets or alleys."

It is true that in *Holton v. Mocksville, supra,* and in *Gallimore v. Thomasville, supra,* the Private Acts were passed to validate the proceedings pursuant to which these respective towns had made local improvements and purported to assess certain portions of the cost thereof against abutting property. This does not make these cases any less authoritative on the question posed, since the General Assembly cannot validate by a public-local, private or special act that which it could not have authorized by a similar act in advance. *Edwards v. Commissioners,* 183 N.C. 58, 110 S.E. 600; *Construction Co. v. Brockenbrough,* 187 N.C. 65, 121 S.E. 7; *Storm v. Wrightsville Beach,* 189 N.C. 679, 128 S.E. 17; *Commissioners v. Assell,* 194 N.C. 412, 140 S.E. 34; *Barbour v. Wake County,* 197 N.C. 314, 148 S.E. 470; *Greene County v. R. R.,* 197 N.C. 419, 149 S.E. 397; *Efird v. Winston-Salem,* 199 N.C. 33, 153 S.E. 632; *Crutchfield v. Thomasville,* 205 N.C. 709, 172 S.E. 366.

This Court, in *Brown v. Commissioners,* 173 N.C. 598, 92 S.E. 502, held that, "An Act to authorize the board of commissioners of Mc-

Dowell County to issue bonds for road purposes in North Cove Township in said county," was a valid law and not in conflict with Section 29, Article II, of our Constitution.

In *Mills v. Commissioners,* 175 N.C. 215, 95 S.E. 481, Chapter 575, of the Public-Local Laws of 1917, was upheld. The act provided for the issuance of bonds by Iredell County "for the purpose of building bridges over the Catawba River jointly with the county of Catawba."

Furthermore, in *S. v. Kelly,* 186 N.C. 365, 119 S.E. 755, we held that a public-local act providing for the maintenance of highways in Pender County by the levy of taxes or the issuance of bonds for such purpose, was not in conflict with Section 29, Article II, of the Constitution, where it does not affect the "laying out, opening, altering, maintaining or discontinuing" the then existing highways.

In light of our decisions, we hold that the acts involved on this appeal are valid and not repugnant to the above section of our Constitution.

Did the failure to state in the preliminary resolutions, passed on 3 March, 1952, the reasons proposed for making the improvements as provided in Section 2 (b) of Chapter 924 of the Session Laws of 1949, invalidate the proceedings?

There is no contention that the petitioner did not have notice of the proposal to improve Liberty Street and of the intention to assess his property with its pro rata share of the cost. There is no contention that the proposed improvements were not adequately described in the published notices, or that such improvements were not necessary in the public interest, or that the petitioner's property has not been enhanced in value by such improvements in an amount equal to the assessments against the property. Nothing by which the petitioner could possibly have been prejudiced was omitted from the published notices. Moreover, the petitioner filed no written objection to the legality of the proceedings on or before the hearing of the proposal to make such improvements, as required by Section 2 (f) of the act; and the act further provides that any objection not so made will be waived. Furthermore, the reasons for making the improvements were given and incorporated in the minutes of the City Council at a later date. Even so, the act only requires a substantial compliance with Section 2 thereof and not a strict or literal compliance.

The finding of the court below to the effect that the City Council of the City of Durham substantially complied with the requirements of Section 2 of Chapter 924 of the Session Laws of 1949 is supported by the evidence and must be upheld. *Schank v. Asheville,* 154 N.C. 40, 69 S.E. 681; *Gallimore v. Thomasville, supra; Vester v. Nashville,* 190 N.C. 265, 129 S.E. 593; *Asheboro v. Miller,* 220 N.C. 298, 17 S.E. 2d 105.

This Court said in *Gallimore v. Thomasville, supra,* "There is a presumption in favor of the regularity of a proceeding under which public improvements, authorized by the General Assembly, have been made. An attack upon the validity of such proceeding, for mere irregularities, first made after the improvements have been complete, by those who seek, by such attack, to have their property, which has received the benefit of such improvements, relieved of assessments made for the purpose of paying for the improvements, will not be sustained, when it appears that notices required by statute have been given and ample opportunity afforded for all interested persons to be heard before the improvements were ordered and made."

The assignments of error relating to this contention are overruled.

Is the assessment on the south side of Liberty Street for twenty feet more frontage than actually abuts directly on the improvement, illegal and void?

We interpret the factual situation with respect to this property to be as follows: It abuts directly for 113.62 feet on the south side of Liberty Street. The confluence of Liberty and Taylor Streets begins at the northwest corner of the petitioner's property, forming an arc, beginning and ending in the western line of the petitioner's property. All the land within the arc is the unused portion of the triangular lot condemned for street purposes. But the paving is outside the arc and the area within the arc is unimproved, and we can find no evidence in the record tending to show that the City of Durham actually dedicated this remaining portion of the triangular lot for street purposes.

The petitioner's property abuts directly on this small area at the base of the arc, it being twenty feet from the petitioner's property line to the western tip of the arc. The twenty feet against which the assessment is levied being arrived at by drawing a perpendicular line at the western tip of the arc to Liberty Street, parallel with the western line of the petitioner's property.

Counsel for the appellee did not argue to this Court that the area in controversy has been dedicated for street purposes. He merely said in his brief, "The record contains no evidence or agreement that this triangular-shaped area has not been dedicated and set apart as a part of the public street and sidewalk." *Winborne, J.,* in speaking for the Court in *Winston-Salem v. Smith,* 216 N.C. 1, 3 S.E. 2d 328, said: ". . . in the absence of a finding that the street lines as fixed by the city include the strip, it is apparent that there is intervening land between defendant's property and the improvement. . . . Nor do we think that the acquisition of the whole lot for street purposes and the construction of a street and a sidewalk on a part thereof amount to a dedication of the whole lot by the city for street purposes. . . . There-

fore, the fact that the city purchased a lot in fee simple and constructed a street thereon, without more, does not show that the entire lot is dedicated as a street. Plaintiff contends that defendant's property is subject to the assessment for that defendant has the right of ingress and egress over the intervening line to the improvement, but in the light of the agreed facts that the fee simple title thereto is in the city and *there being no evidence of a dedication to public purposes,* we do not think the position tenable." (Italics ours.) Anno. 166 A.L.R. 1092.

We think the assessment against the property of the petitioner of the cost of the paving, curb and gutter along the additional twenty feet in controversy, in the absence of evidence that the area in question has been dedicated for street and sidewalk purposes, by the City of Durham, is without legal authority and is null and void, and we so hold. We do not think the twenty feet abuts directly on the property as contemplated by our statutes. G.S. 160-78 and G.S. 160-85. Neither do we think the fact that the City of Durham obtained the triangular lot for street purposes by condemnation rather than by deed distinguishes this case from the case of *Winston-Salem v. Smith, supra.*

The judgment of the court below will be modified to the above extent and the assessment roll amended accordingly.

Modified and affirmed.